Nathaniel Foote, State Bar No. 318998
*Admitted Pro Hac Vice*
Lydia Atkinson, State Bar No. 085479
*Admitted Pro Hac Vice*
Andreozzi + Foote
4503 N. Front St.
Harrisburg, PA 17110
Telephone: 717-525-9124
Facsimile: 717-525-9143
Email: teame@vca.law; lydia@vca.law

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JANE DOE C.R.1835,** | **Case No.** 3:26-cv-11077 |
| **Plaintiff,** | **MDL No. 3166** |
| **v.** | **COMPLAINT FOR DAMAGES** |
| **ROBLOX CORPORATION, a corporation,** | **DEMAND FOR JURY TRIAL** |
| **Defendant.** | |

Plaintiff JANE DOE C.R.1835 ("Plaintiff") by and through her undersigned counsel, for her Complaint against Defendant Roblox Corporation ("Roblox" or "Defendant"), pleading hypothetically and in the alternative, states as follows:

## I. INTRODUCTION

1. This is a uniquely egregious case of public importance involving a multibillion-dollar company, Roblox, which created, designed, marketed, and distributed a mobile and web-based gaming platform and application (the "app" or "game") that it misleadingly held out to the public, parents, and its users as being a safe platform for children. In reality, Defendant's app was (and still is) a haven for adult sexual predators and pedophiles who use the unreasonably dangerous and negligently designed app to gain access to and prey upon thousands of

unsuspecting minors, resulting in countless children being groomed, exploited, extorted, sexually abused, and even kidnapped and sex trafficked. Plaintiff is one of the many victims of Roblox.

2. Plaintiff was introduced to a predator on Roblox beginning in approximately 2018, when she was approximately twelve years old. The perpetrator, an adult, contacted Plaintiff through Roblox's private messaging feature and, over the course of their communications, worked to gain her trust while engaging her in sexually explicit conversation. This exploitation continued until approximately 2021, when Plaintiff was approximately fifteen years old.

3. The perpetrator sent Plaintiff sexually explicit images and videos, including images depicting real people engaged in sexual acts and completely nude, and caused Plaintiff's avatar to engage in sexual conduct within the app. The perpetrator asked Plaintiff to send her own photographs or videos, which she did not do, offered her Robux, gifts, and other benefits, and instructed her to keep their communications secret. When Plaintiff did not comply with his demands, the perpetrator threatened and attempted to blackmail her, and he obtained her real name and contact information and attempted to arrange an in-person meeting with her.

4. Sextortion, a combination of the words "sex" and "extortion" is a term used to describe a form of online sexual exploitation that commonly occurs to young users on Roblox. The Federal Bureau of Investigation (FBI) and its law enforcement partners have recognized sextortion as a significant global crisis, particularly impacting minors. This crime involves coercing individuals, often through deception and threats, into sending sexually explicit images or videos online, which are then used for blackmail, either for further explicit content, sexual favors, or financial gain. These schemes disproportionately target minors, and are known to lead to severe emotional distress, self-harm, or even suicide.

5. The predator who targeted Plaintiff is just one of many who regularly use Roblox to gain access to and prey on children. Plaintiff brings this lawsuit against Defendant for the devastating damages caused by its tortious and punitive conduct in designing, managing, and promoting the app, which facilitated the grooming, and sexual exploitation of Plaintiff (and countless other children).

6. Through their pervasive misrepresentations about safety, Defendant lures parents into believing its app is an appropriate place for children to play. In reality, and as Defendant well knows, the unreasonably dangerous and defective design of the app makes children easy prey for pedophiles. It allows adult users to identify and readily initiate conversations, and exchange Robux, with children. These defective and unreasonably dangerous design features allow adult users to easily locate, groom, and exploit children. These predators manipulate or coerce children into sending sexually explicit images or meeting in person. There are reasonable alternative designs and features which Roblox could implement into its app to protect children and make the app safer. But time and again it has refused to implement basic safety features to protect against exactly the kind of harm which Plaintiff suffered here.

7. The reason for Defendant's unlawful and tortious conduct is simple: Defendant prioritizes growing the number of users of its app over child safety. As one former Roblox employee explained in describing the company's approach to child safety, **"You have to make a decision, right? You can keep your players safe, but then it would be less of them on the platform. Or you just let them do what they want to do. And then the numbers all look good and investors will be happy."** [1] Defendant's prioritization of growth over the safety of children has devastated the lives of children who use its app.

8. Plaintiff's parent allowed her to use Roblox because they trusted Roblox's representations that the app was safe and educational for children. Plaintiff's family later learned that Plaintiff had been communicating with an adult predator who sexually exploited and abused her through Roblox. Tragically, what happened to Plaintiff is hardly an isolated event. Plaintiff is one of countless children whose lives have been devastated because of Defendant's misrepresentations and defectively designed app. This action, therefore, is not just a battle to vindicate Plaintiff's rights—it is a stand against Defendant's systemic failures to protect society's most vulnerable from unthinkable harm in pursuit of financial gain over child safety.

---

[1] 1 Roblox: Inflated Key Metrics for Wall Street and a Pedophile Hellscape for Kids, Hindenburg Research (Oct. 8, 2024), https://hindenburgresearch.com/roblox/.

///

///

///

## II. PARTIES

### A. Plaintiff

9. Plaintiff is a resident of the State of Ohio, with a principal place of residence in Clark County.

10. Plaintiff was a minor at the time of using Defendant's app and, as such, she lacked the legal capacity to enter any binding agreements. The sexual exploitation in question occurred when Plaintiff was approximately twelve to fifteen years old. To the extent Defendant claims any contract has any effect on Plaintiff's rights in this action, such an assertion is legally erroneous, invalid, and unenforceable because Plaintiff disaffirms any such contract, including any contract containing a forced arbitration agreement and any delegation clause in any contract.

11. As a direct and proximate cause of Defendant's wrongful and tortious conduct, and the resulting psychological abuse, Plaintiff has suffered and continues to suffer serious injuries and damages, including but not limited to mental suffering, emotional distress, psychological trauma, severe anxiety, depression, and other irreparable harm. Plaintiff has also endured humiliation, shame, fear, and a profound loss of trust, safety, and innocence. These injuries are severe, permanent, and continuing, leaving Plaintiff with lifelong consequences and ongoing emotional and psychological suffering. Plaintiff has sustained and will continue to sustain economic damages as well, including but not limited to past and future medical expenses, lost education, and loss of income and/or lost earning capacity.

### B. Defendant

12. Defendant Roblox Corporation is a Nevada corporation with its principal place of business in San Mateo, California. Roblox owns, operates, controls, produces, designs, maintains, manages, develops, tests, labels, markets, advertises, promotes, supplies, and distributes the Roblox app. Roblox is widely available to consumers throughout the United States, including in California.

**C. Tolling of the Statute of Limitations**

13. Through the exercise of reasonable diligence, Plaintiff did not and could not have discovered that Defendant's products caused her injuries and/or sequelae thereto because, at the time of these injuries and/or sequelae thereto, the cause was unknown to Plaintiff. Plaintiff did not suspect and had no reason to suspect Defendant's products caused Plaintiff's injuries and/or sequelae thereto until less than the applicable limitations period prior to the filing of this action. Due to the highly technical nature of the platform's features, Plaintiff was unable to independently discovery that Defendant's products caused her injuries and/or sequelae thereto until less than the applicable limitations period prior to the filing of this action. Defendant had exclusive knowledge of the material defects designed and implemented into their platforms, and they have at all times through the present maintained their proprietary designs of their platforms' features as strictly confidential. In addition, Defendant's fraudulent concealment and/or other tortious conduct has tolled the running of any statute of limitations. Defendant had a duty to disclose dangerous and defective features that cause foreseeable harm to children and teens. Defendant knowingly, affirmatively, and actively concealed from Plaintiff the risks associated with the defects of Defendant's products and that these products caused their injuries and/or sequelae thereto. Defendant committed tortious and/or fraudulent acts that continue to this day. As of the date of this Complaint, Defendant still has not disclosed, and continue to conceal, that they designed and implemented dangerous features into their platforms. Despite their knowledge of the defects and their attendant safety risks, Defendant continues to market their platforms to children and teens while simultaneously omitting the disclosure of known and foreseeable harms to children and teens. Plaintiff was unaware and could not have reasonably known or learned through reasonable diligence that they had been exposed to the defects and risks alleged herein and that those defects and risks were the direct and proximate result of Defendant's acts and omissions. Therefore, Defendant is estopped from relying on any statutes of limitation or repose as a defense in this action. All applicable statutes of limitation and repose have been tolled by operation of the discovery rule and by Defendant's active concealment with respect to all claims against Defendant.

## III. JURISDICTION

14. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.

15. This Court has personal jurisdiction over Defendant because Defendant has its principal place of business in this State, is registered to do business in this State, regularly conducts business in this State, provides its app to persons in this State, and derives substantial revenue from this State; Defendant affirmatively and extensively engages with a significant percentage of this State's residents through messages, notifications, and other communications; and Plaintiff's causes of action arise from Defendant's forum-related contacts.

16. Venue is proper in the Northern District of California under MDL 3166, STIPULATED CASE MANAGEMENT ORDER – DIRECT FILING ORDER, Dkt. 161, as this case would be subject to transfer to MDL 3166.

17. If not for STIPULATED CASE MANAGEMENT ORDER – DIRECT FILING ORDER, Dkt. 161, venue would be proper in the Northern District of California under 28 U.S.C. 1391 (b) because Defendant conducts business in the District, is subject to jurisdiction in the District at all times relevant to this suit; thus, a substantial part of the acts or occurrences giving rise to this suit occurred within the Northern District of California.

## IV. FACTUAL ALLEGATIONS AGAINST ROBLOX

### A. Roblox Offers a Gaming App For Children

18. Roblox, launched in 2006, is an online gaming app hosting more than 40 million user-generated games (called "experiences"), most now created by third-party developers.

19. Roblox is free to download and readily accessible to children on gaming consoles, computers, tablets, and cellular devices.

20. Roblox is designed as an interactive experience featuring gameplay interactions, user hubs, direct messaging, and voice chat, which Roblox's CEO describes as "the next phase of human interaction."

21. Roblox specifically designed its app for children, describing itself on its FAQ page as a "virtual playground and workshop" where "kids of all ages can safely interact, create, have fun, and learn."

22. Roblox's FAQ states the app is "designed for 8–18-year-olds, but it is open to kids of all ages."

23. Roblox has marketed itself as the "#1 gaming site for kids and teens" and as an educational experience for young users.

24. Roblox claims its experiences provide "new gateways into learning" and "standards-aligned, immersive educational experiences designed by curriculum experts."

25. Roblox's FAQ asserts that children "learn best by making things," invoking MIT Media Lab "Constructionism" theory to promote the app's purported educational value.

26. Roblox tells parents that, unlike other kids' sites focused on socializing and games, Roblox also satisfies children's "hunger for creativity and learning."

27. During the pandemic, Roblox's child user base exploded; by September 2020, roughly 30 million people, more than half under 13, used Roblox daily.

28. In its 2023 Annual Report, Roblox reported 68.5 million daily active users, approximately 42% of whom were under 13.

29. Roblox is the most downloaded online game globally, and the average user spends 139 minutes per day on the app.

30. Roblox requires only a birthdate, username, and password to sign up; there is no age minimum, no age verification, and users of any age can easily misrepresent their age.

31. Although Roblox states that children need parental permission to sign up, nothing in the app confirms or documents that permission, however young the child.

32. Upon signup, every user is assigned a default cartoon avatar that represents them in games.

33. Users may then play in millions of experiences across categories, with recommendations driven by the user's stated age and Roblox's algorithm.

34. Until November 2024, Roblox defaulted to settings that allowed adult strangers to friend, direct-message, and chat with children of any age, both within experiences and privately; Plaintiff's account was so defaulted.

35. Under current defaults, adults cannot directly message users under 13, but Roblox still relies on self-reported birthdates, so children can access adult messaging with a fake 13+ birthdate, and adults can pose as children the same way.

36. Roblox generates revenue largely by selling its in-game currency, Robux, which users can buy outright, receive through a Roblox Premium subscription, or send via gift cards.

37. Children frequently become fixated on obtaining Robux to buy in-game items, including rare items sold at inflated prices, and are known to tell others, including strangers, they will do "Anything for Robux."

**B. Roblox Lures Parents into Letting their Kids Use Roblox with Promises of Safety**

38. Roblox's growth has hinged on constant assurances to parents, across its website, press coverage, and executive statements, that the app is educational and safe for children.

39. These representations are knowingly, recklessly, and negligently false and misleading.

40. Over the years, Roblox has repeatedly represented on its website that the app is safe for children and has touted its safety controls.

41. In 2006, Roblox represented that its policies made the app "a safe place for people of all ages, including very young children," that its staff actively monitored the app and issued warnings, and that accounts engaged in "Predatory Behavior" would be immediately destroyed and reported to authorities.

42. From 2007 onward, Roblox advertised that "kids of all ages can safely interact, create, have fun, and learn" on its app.

43. From 2008 to 2016, Roblox promised parents it took "every precaution possible" to protect kids and had a zero-tolerance policy for sexual, violent, or aggressive content, with immediate suspension or permanent expulsion of offenders.

44. Roblox has consistently portrayed itself as “family friendly” and safe for children of all ages.

45. Roblox’s 2017 website continued this same portrayal.

46. In 2017, Roblox began asserting it takes “kids’ safety and privacy very seriously,” pre-reviews all uploaded images, video, and audio for appropriate content, and staffs moderators around the clock to review abuse reports.

47. Roblox has advertised the app as “a safe, moderated place to meet, play, chat, and collaborate on creative projects.”

48. Through 2023, Roblox continued to claim “cutting-edge technologies” and “advanced text filters” to keep the platform safe and family-friendly.

49. Roblox’s current website claims “Safety is in our DNA” and that safety has been a top priority since Roblox launched in 2006.

50. Roblox currently touts a “stringent safety system and policies,” including thousands of trained moderators, safety review of every uploaded image, audio, and video file, and stricter chat filters for children under 13.

51. Roblox’s assurances are echoed by its highest executives, including in direct response to parental concerns.

52. In 2009, CEO David Baszucki assured a concerned parent that Roblox flags and removes offensive content and “investigate[s] immediately” when marginal content is flagged.

53. In a 2013 Wired interview, CEO Baszucki reiterated verbatim that Roblox takes “every precaution possible” to protect kids from “inappropriate and offensive individuals.”

54. Roblox’s current Vice President of Civility & Partnerships, Tami Bhaumik, has repeated these assurances to parenting magazines, news outlets, and podcasts, and to international online safety experts.

55. In 2024, Bhaumik told Parents Magazine that ensuring players can “learn, create, and play safely” is Roblox’s “most important priority” and “will never change.”

56. As early as 2018, Bhaumik told the Washington Post and other outlets that Roblox focuses on doing everything "in a safe and appropriate way" and reviews every uploaded image, video, and audio file for safety.

57. In 2019, on a "Digital Civility Panel," Bhaumik touted Roblox's reporting system and moderation team, yet conceded that digital civility "did not exist at Roblox a year and a half ago" and was "still very early days."

58. In 2022, Bhaumik claimed Roblox's "number one priority" is a safe community and boasted of "thousands of human moderators" and machine learning that removes reported content "within minutes."

59. In 2023, Matt Kaufman was appointed Roblox's Chief Safety Officer and adopted the same safety narrative.

60. In a 2024 Roblox blog post, Kaufman claimed Roblox has spent "almost two decades" building "one of the safest online environments" and that filters block sharing of personal information for users under 13.

61. Kaufman has also touted Roblox's "track record of putting the safety of the youngest and most vulnerable people on our platform first."

62. Kaufman told NPR that "any time anything happens to a child that puts them at risk is one too many."

**C. Roblox Knowingly Causes and Materially Contributes to the Sexual Exploitation of Children**

63. Roblox is overrun with harmful content and predators because Roblox prioritizes user growth, revenue, and profits over child safety, and has done so for years through deliberate design decisions to increase and monetize users regardless of the consequences.

**1. Roblox Prioritizes Growth Over Child Safety**

64. From its inception, Roblox has focused on growth above all else, deliberately targeting children by exploiting their free time, underdeveloped cognitive functioning, and diminished impulse control while marketing itself as a safe place to learn and play.

65. Roblox attracted major venture-capital funding from investors like Kleiner Perkins and Andreessen Horowitz, and, under that pressure, designed its app to welcome children of any age with no age-verification safeguards and a signup process so easy that even the youngest could join.

66. When Roblox went public in 2021 at a $41 billion valuation, it prioritized rapid growth in revenue and engagement metrics—new users, daily active users, and hours spent—on the theory that profitability would follow at scale.

67. To hit those numbers, Roblox deprioritized reasonably available safety measures; executives rejected employee proposals for parental-approval requirements, and employees reported explicit pressure to avoid design changes that could reduce engagement, even when those changes would protect children.

68. Former employees have described the tradeoff: keeping players safe would limit engagement and hurt active-user and time-spent metrics that leadership and investors prized, so leadership chose the numbers.

69. Limiting in-app safety measures also reduced Roblox's safety expenses as a percentage of revenue, a metric Wall Street favors; Barclays, for example, treated additional safety investments as a downside case and a negative in Roblox's quarterly earnings.

70. On earnings calls, Roblox has repeatedly signaled that trust-and-safety spending should shrink as a percentage of revenue, meaning the company is not investing proportionally in safety as its user base grows.

71. On the Q4 2023 call, CFO Mike Guthrie described infrastructure and trust-and-safety "cost to serve" as roughly 11% and targeted a high-single-digit figure "over the next few years," saying "there's more to do there."

72. Guthrie has separately told investors to expect trust-and-safety costs to "scale below linear as we grow" and to grow "at a lower rate than our bookings growth."

73. In Q2 2024, CEO Baszucki highlighted that infrastructure and trust-and-safety expenditures were 8% lower year-over-year, reflecting Roblox's refusal to adopt reasonable

alternative design features that would address the safety threat its current design poses to children.

74. After going public, Roblox pivoted from its "#1 gaming site for kids and teens" branding to pursue older users, a market it had not saturated.

75. In its IPO filings, Roblox identified "age demographic expansion" as a key strategy because older users, though spending fewer hours on the app, "monetize better" and have "more direct control over their spend."

76. Executives repeatedly emphasized "aging up" the app; in September 2021, CFO Guthrie touted "very good penetration of nine- to twelve-year-olds" and focused on adding users over 13, including by tuning search algorithms to route older users to older content.

77. At its Developer Conference, CEO Baszucki urged developers to build for older audiences and rolled out features aimed at them—real names, screen capture and sharing, video calls, and relaxed chat moderation—creating new vulnerabilities for children.

78. By Q2 2023, Baszucki declared the aging-up goal achieved—"We are a platform for all ages"—and noted developers were building "specific 17-plus experiences," a pivot Wall Street praised as a sustainable growth tailwind.

79. Despite deliberately targeting older users, Roblox did not implement meaningful restrictions on adult-child contact or limit the mature content it solicited from developers.

80. Baszucki has admitted Roblox has "not only 13 and up experiences"; even experiences with a majority of 13-plus users remain open to all ages, and Roblox imposed no access limits on the 17-plus experiences it encouraged.

81. Roblox has also sought to facilitate "real-life relationships"—i.e., dating—between users; at its 2023 Developers Conference, Baszucki announced plans to build a product to support it while pointedly avoiding the word "dating."

82. In 2024, Baszucki explicitly acknowledged the dating strategy, calling it "edgy" and mocking his own safety team's concerns to audience laughter.

83. For years, then, Roblox has systematically subordinated child protection to growth and profit, knowingly exposing children to preventable dangers.

**2. Roblox Materially Contributes To Child Sexual Exploitation Through The Unreasonably Dangerous Design Of Its App, Inadequate Safety Features, And Refusal To Implement Basic Safety Protections**

84. Roblox's growth-over-safety choices are reflected in numerous design and safety decisions; had Roblox acted differently, the harm to countless children would not have occurred.

85. Roblox designed its app so anyone could easily communicate with children: until November 2024, adult strangers could friend and directly message children of any age, and children could bypass under-13 parental controls simply by creating an alternate account with a fake 13-plus birthdate.

86. This design contrasts with products like Nintendo, which use preprogrammed dialogue options to tightly control interactions; a comparable design could have significantly reduced or eliminated the grooming and abuse facilitated by Roblox.

87. Roblox also enabled predators to move victims to other platforms: its March 2022 Community Standards allowed users to link only to YouTube, Facebook, Discord, Twitter, and Twitch—including Discord, which Roblox had previously refused to allow because of the risk of "unfairly exposing underage users."

88. Roblox further encourages off-platform contact by allowing users to display Discord and other messaging usernames in their Roblox profiles.

89. Roblox profited even when the sexual solicitation moved to another platform because children were coerced with Robux to send explicit photos or videos, and the cross-platform interconnectivity kept engagement high for Roblox.

90. Roblox further endangered children by launching "Roblox Connect" in November 2023, a real-time voice-call feature between avatars, despite immediate user warnings that it would make it easier for predators to prey on children.

91. Roblox knew this from Omegle, which had added video chat in 2010, became infamous for exposing minors to predators and explicit material, and shut down in November 2023—the same month Roblox launched Roblox Connect—with its founder acknowledging users had committed "unspeakably heinous crimes."

92. Roblox refused to require basic identity verification, allowing users to create accounts without a name or email address, which lets predators easily create multiple anonymous accounts.

93. Roblox also refused to require names, email addresses, and verifiable parental consent for children under 13, sidestepping COPPA, which Congress enacted because children under 13 cannot fully appreciate the safety and privacy implications of sharing personal information.

94. The FTC has outlined accepted methods of obtaining verifiable parental consent, including signed forms, credit-card or online-payment verification, video conferences with trained personnel, staffed toll-free lines, knowledge-based questions, and photo-ID verification with facial-recognition matching.

95. Rather than comply, Roblox intentionally avoids collecting names or emails at signup to sidestep verifiable parental consent; former employees confirm the company considered but rejected the requirement out of fear it would drive users away, and executives likewise rejected in-chat pop-up safety notices.

96. Although Roblox knew predators run dozens of accounts simultaneously, it declined to block basic digital identifiers such as IP and MAC addresses that could prevent multi-account abuse.

97. Roblox also declined to require adult users to verify phone numbers, despite knowing this enables bad actors to create numerous anonymous accounts to target children.

98. Roblox did not require ID-based age or identity verification—used by many other apps—which would have restricted young-user content and stopped predators from posing as children.

99. Roblox failed to restrict communications between adult and child accounts and failed to restrict Robux transfers from adult to child accounts, a common grooming tool.

100. Roblox failed to create a separate, gated platform for children that excludes adults.

101. Roblox failed to place a higher age rating on its product in app and online stores to signal risk to parents.

102. Roblox failed to warn parents about the presence of sexual predators on the platform.

103. Roblox failed to warn children about predators or instruct them on how to stay safe.

104. Roblox was aware that many other online gaming and social-media platforms had implemented mandatory age verification to combat the well-known problem of grooming and sextortion.

105. Roblox was aware of and could have used available age-verification technologies—biometric authentication, ID-document verification, profile-picture matching, and continuous verification—used by other platforms.

106. Roblox nonetheless failed to deploy age-verification technology or engage skilled third-party vendors, despite its longstanding knowledge of that option and of the danger to its minor users.

107. Roblox instead markets itself as an "industry leader" in child safety, touting AI and machine-learning systems that supposedly scan all communications to block inappropriate content and personal information.

108. That technology is grossly inadequate: Roblox's filters block words like "Snap," "Snapchat," and "Discord" but allow easy workarounds (ghost or disc emojis, alternate spellings like "Snappy" or "iscord"), and block numeric phone numbers but not spelled-out numbers.

109. Roblox also employs only about 3,000 moderators—far fewer than platforms like TikTok, which employs roughly 40,000 for only three times the users—and moderators, many overseas contractors, report being overwhelmed by unmanageable volumes of child-safety reports.

110. Roblox's touted safety data is self-serving; it points to accounting for less than 0.04% of NCMEC reports, yet those reports depend on Roblox's own moderation and have surged from 675 in 2019 to 13,316 in 2023.

111. Roblox similarly boasts that only 0.0063% of its content is flagged, but Roblox itself controls the flagging systems, so those numbers reflect Roblox's inadequate reporting and enforcement, not safety.

112. The very existence of Roblox's trust-and-safety training data on inappropriate communications contradicts its claim that "one is too many," because the data exists only because widespread abuse has already occurred and its safety systems are designed to react rather than prevent.

113. Roblox's own developers say the platform is unsafe for children, describing "abysmal" moderation, pervasive NSFW content, and Roblox's lack of interest in real fixes unless bad press goes viral.

114. Those statements, from people familiar with Roblox's design and operations, depict a product where harmful content flourishes, predators thrive, and Roblox fails to act despite widespread and urgent warnings.

## V. PLAINTIFF-SPECIFIC ALLEGATIONS

115. Plaintiff is currently twenty years old. Beginning in approximately 2015, when she was approximately twelve years old and continuing until approximately 2021, when Plaintiff was approximately fifteen years old, Plaintiff was an avid Roblox user who was traumatically groomed and sexually exploited by a predator she met through Defendant's app, which enabled and facilitated the predator's crimes. As a result of Defendant's reckless disregard for child safety, Plaintiff has suffered devastating psychological trauma that has forever changed her life.

116. When Plaintiff first downloaded and started playing Roblox, her account defaulted to a setting which allowed communication between Plaintiff and adults using the app. Plaintiff's parent believed that Roblox was safe for children because it was designed and marketed for kids and promoted as being safe and educational.

117. As discussed above, Roblox spent considerable time and money publicly touting the safety and security of its app, which created the public perception that it was offering a safe product for kids. Unbeknownst to Plaintiff's parent at the time, these representations were nothing more than a false façade of safety.

118. When Plaintiff was approximately twelve years old, Roblox enabled an adult predator to identify, groom, and exploit her after being introduced to her on Roblox, a game

designed for children. Such contact was possible because Roblox refused to design its app with an age-verification system despite having the technological capability to do so.

119. The predator who located and targeted Plaintiff on Roblox sent her sexually explicit images and videos, including depictions of real people engaged in sexual acts and completely nude, and caused Plaintiff's avatar to engage in sexual conduct within the app. The predator asked Plaintiff to send her own photographs or videos, which she did not do, offered her Robux, gifts, and other benefits, and instructed her to keep their communications secret. The predator threatened and attempted to blackmail Plaintiff, obtained her real name and contact information, and attempted to arrange an in-person meeting with her.

121. Plaintiff has suffered profound harm from the grooming and sexual exploitation she experienced because of Defendant's app, including post-traumatic stress disorder, borderline personality disorder, anxiety, and depression. Plaintiff has undergone and continues to undergo mental health treatment because of the exploitation she endured.

122. Had Plaintiff's parents known the truth about Defendant's app, they would never have permitted Plaintiff to use the app without strict supervision. Had Defendant designed the app with even the most basic screening or age and identity verification, as well as effective parental controls, Plaintiff would never have interacted with the predator who exploited her and never would have suffered the harm that she did. In short, Plaintiff's life has been devastated as a direct result of Defendant's conduct.

## VI. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### STRICT LIABILITY – DESIGN DEFECT

### (By Plaintiff Against Defendant Roblox Corporation)

123. Plaintiff incorporates each and every factual allegation set forth above.

124. This claim is brought against Defendant Roblox.

125. At all relevant times, Defendant designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefited from the use of its app by Plaintiff.

126. This product was designed, manufactured, maintained, controlled and distributed from Defendant's California headquarters.

127. Defendant's app was designed and intended to be a gaming and/or communication product. The software and architecture of the app is the same for every user that logs on or signs up for an account. The app is uniformly defective and poses the same unreasonable danger to each minor user.

128. Defendant's product is distributed and sold to the public through retail channels (e.g., the Apple App "Store" and the Google Play "Store").

129. Defendant's product is marketed and advertised to the public for the personal use of the end-user/consumer.

130. Defendant defectively and unreasonably designed its app to allow children to come into contact with child predators. Children such as Plaintiff are particularly unable to appreciate the risks posed by the product.

131. The defects in the design of Defendant's app existed prior to the release of these product to Plaintiff and the public, and there was no substantial change to Defendant's app between the time of its upload by Defendant to public or retail channels (e.g., the App Store or Google Play) and the time of its distribution to Plaintiff via download or URL access.

132. Plaintiff used the app as intended, and Defendant knew or, by the exercise of reasonable care, should have known that Plaintiff would use its app without inspection for its dangerous nature.

133. Defendant defectively designed its app to appeal to adult predators by making it easy to find children and enabled their contact, grooming, sexual exploitation, and sexual abuse of children, including Plaintiff.

134. Defendant failed to test the safety of the features it developed and implemented for use on its app. When Defendant did perform some product testing and had knowledge of ongoing harm, it failed to adequately remedy its product's defects or warn Plaintiff and her parent.

135. Defendant's app is defective in design and poses a substantial likelihood of harm for the reasons set forth herein, because the product fails to meet the safety expectations of ordinary

consumers when used in an intended or reasonably foreseeable manner, and because the product is less safe than an ordinary consumer would expect when used in such a manner. Children and teenagers are among the ordinary consumers of Defendant's product. Indeed, Defendant aggressively markets, promotes, and advertises its app to pre-teen and young consumers. Pre-teen and young consumers, and their parents and guardians, do not expect Defendant's app to expose them to predators when the product is used in its intended manner by Defendant's intended audience. They do not expect the design of Defendant's app to make it easy for child predators to sign-up for accounts and find children, groom children, and sexually exploit children. They do not expect Defendant's revenue and profits to be directly tied to predators' extortion of children.

136. An ordinarily prudent company, being fully aware of the risks posed to children from sexual predators who can easily identify and exploit children, would not have placed the app on the market.

137. Defendant's app is likewise defectively designed in that it creates an inherent and unreasonable risk of danger; specifically, a risk of grooming, sexual abuse, and sexual exploitation, which can lead to a cascade of harms. Those harms include but are not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

138. Defendant could have utilized cost-effective, reasonably feasible alternative designs, including changes to the problematic features described above, to minimize the harms described herein, including, but not limited to:

a. Requiring children to have parental approval and a parent's email address to sign-up for an account;

b. Effective parental controls;

c. Effective parental notifications, including notifying parents any time a child messages another user, particularly an adult user, or notifying parents when children interact with accounts that have been blocked by other users or suspended in the past, among other controls;

d. Setting default safety settings to the most protective options, including blocking direct messaging between child and adult users, or only allowing messaging between adult users and a child with the parent's explicit permission to message the adult user;

e. Requiring adults to provide a phone number when signing up for an account;

f. Pop-up safety notices within chats and games to warn users about inappropriate behavior;

g. Preventing strangers from sending Robux to child accounts, and preventing children from sending Robux to strangers' accounts;

h. Banning IP and MAC addresses of accounts associated with known abusers;

i. Controlled chat option;

j. Providing a transcript of a child's communications to the parent;

k. Implementing reporting protocols to allow users or visitors of Defendant's app to report child sex abuse material and adult predator accounts specifically without the need to create or log in to the product prior to reporting;

l. Robust age and identity verification; and

m. Others as set forth herein.

139. The absence of the above features, individually and combined, constitutes a design defect. Alternative designs were available that would prevent child predators from finding, grooming, and exploiting children, and which would have served effectively the same purpose of Defendant's product while reducing the gravity and severity of danger posed by the product's defects.

140. Plaintiff used Defendant's app as intended or in reasonably foreseeable ways.

141. The physical, emotional, and economic injuries of Plaintiff were reasonably foreseeable to Defendant at the time of its app's development, design, advertising, marketing, promotion, and distribution.

142. Defendant's app was defective and unreasonably dangerous when it left Defendant's possession and control. The defects continued to exist through the product's distribution to and use by consumers, including Plaintiff, who used the app without any substantial change in the product's condition.

143. Defendant knew or should have known of the unreasonable dangerousness of its app and failed to accompany the product with a warning adequate to guard against the unreasonable danger.

144. As manufacturers, designers, and sellers, Defendant had a duty to inform itself with the best knowledge of the risks and the defects of its app and Defendant had such knowledge. Their victims, including Plaintiff, were powerless to protect themselves against unknown harms, and Defendant should bear the costs of their injuries.

145. Plaintiff was injured as a direct and proximate result of Defendant's defective designs as described herein. The defective design of the product was a substantial factor in causing harm to Plaintiff.

146. As a direct and proximate result of Defendant's app's defective design, Plaintiff suffered serious and dangerous injuries.

147. As a direct and proximate result of Defendant's app's defective design, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental, and related expenses.

148. Plaintiff was injured from using Defendant's defective app through no fault of her own.

149. The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendant's app.

150. The conduct of Defendant, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, oppressive, extreme, and outrageous, and displayed an entire want

of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish Defendant and deter others from like conduct.

151. Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## SECOND CAUSE OF ACTION

## STRICT LIABILITY – FAILURE TO WARN

## (By Plaintiff Against Defendant Roblox Corporation)

152. Plaintiff incorporates each and every factual allegation set forth above.

153. This claim is brought against Defendant Roblox.

154. At all relevant times, Defendant designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefited from its product used by Plaintiff.

155. This product was designed, manufactured, maintained, controlled and distributed from Defendant's California headquarters.

156. Defendant's product was designed and intended to be a gaming and/or communication product. The software and architecture of the product are the same for every user that logs on or signs up for an account. This product is uniformly defective and poses the same danger to each minor user.

157. Defendant's product is distributed and sold to the public through retail channels (e.g., the Apple App "Store" and the Google Play "Store").

158. Defendant sold and distributed its product to Plaintiff in a defective and unreasonably dangerous condition by failing to adequately warn about the risk of harm to youth as described herein, including a risk of grooming, sexual abuse, and sexual exploitation, which can lead to a cascade of harms. Those harms include but are not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion,

and profound mental health issues for young consumers including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

159. Defendant was in the best position to know the dangers its product posed to consumers, including Plaintiff, as it had superior knowledge of the risks and dangers posed by its product and had exclusive knowledge of these risks at the time of development, design, marketing, promotion, advertising and distribution. Defendant had exclusive control of its product at all times relevant to this litigation.

160. Defendant's product is dangerous, to an extent beyond that contemplated by the ordinary user who used Defendant's product, because it enabled predators to find, groom, abuse, and exploit children.

161. Defendant knew or, by the exercise of reasonable care, should have known that its product posed risks of harm to youth considering its own internal data and knowledge regarding its product at the time of development, design, marketing, promotion, advertising, and distribution.

162. These risks were foreseeable in light of Defendant's own internal data and knowledge regarding its product at the time of the product's development, design, marketing, promotion, advertising, and distribution to Plaintiff.

163. Defendant's product is defective and unreasonably dangerous because, among other reasons described herein, Defendant failed to exercise reasonable care to inform users that, among other things:

a. Sexual predators use Defendant's product to find, contact, groom and abuse children with alarming frequency;

b. Sexual predators use Defendant's product to solicit, produce, and distribute CSAM with alarming frequency;

c. Sexual predators target young children for CSAM on Defendant's product with alarming frequency;

d. Sexual predators use Robux to coerce children into sending them nude photos or engaging in other types of sexually explicit behavior;

e. Defendant's product is designed in a way that enables and increases risk of exposure to predators and resulting sexual exploitation;

f. Defendant's product causes grooming, sexual abuse, and sexual exploitation, and its resultant physical and mental injuries;

g. Use of Defendant's product can increase risky and uninhibited behavior in children, making them easier targets to adult predators for sexual exploitation, sextortion, and CSAM;

h. Use of Defendant's product can normalize abuse and pornography, leading children to abuse other children either contemporaneously or later when the children are older;

i. New users of Defendant's product can identify themselves as minors, begin to use the product, and do so indefinitely, without ever receiving a safety warning, and without ever having to provide information so that Defendant can warn the users' parents or guardians;

j. The likelihood and severity of harms is greater for children;

k. The likelihood and intensity of these harmful effects is exacerbated by the interaction of each product's features with one another; and

l. Others as set forth herein.

164. Plaintiff was a foreseeable user of Defendant's product.

165. Defendant knew or should have known of the inherent dangerousness of its app and failed to accompany it with a quantum of warning adequate to guard against the harms and injuries described herein.

166. Had Plaintiff or her parent received proper or adequate warnings or instructions as to the risks of using Defendant's product, Plaintiff would have heeded the warnings and/or followed the instructions.

167. Defendant's failures to adequately warn Plaintiff about the risks of its defective product was a proximate cause and a substantial factor in the injuries sustained by Plaintiff.

168. Plaintiff was injured from using Defendant's defective product through no fault of her own.

169. The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff is not the type of risks that are immediately apparent from using Defendant's product.

170. The conduct of Defendant, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish Defendant and deter others from like conduct.

171. Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## THIRD CAUSE OF ACTION

## NEGLIGENCE – UNREASONABLE DESIGN

**(By Plaintiff Against Defendant Roblox Corporation)**

172. Plaintiff incorporates each and every factual allegation set forth above.

173. This claim is brought against Defendant Roblox.

174. At all relevant times, Defendant designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefited from its app being used by Plaintiff.

175. Defendant knew or, by the exercise of reasonable care, should have known that its app was dangerous, harmful, and injurious when used by youth in a reasonably foreseeable manner.

176. Defendant knew or, by the exercise of reasonable care, should have known that its app posed risks of harm to youth. These risks were foreseeable in light of Defendant's own

internal data and knowledge regarding its app at the time of the app's development, design, marketing, promotion, advertising, and distribution to Plaintiff.

177. Defendant knew, or by the exercise of reasonable care, should have known, that ordinary minor consumers such as Plaintiff would not have realized the potential risks and dangers of its app. Those risks include grooming, sexual abuse, and sexual exploitation, which can lead to a cascade of negative effects, including but not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

178. Defendant owed a duty to all reasonably foreseeable users to design a safe app.

179. Defendant owed a heightened duty of care to minor users of its app because children's brains are not fully developed, resulting in a diminished capacity to make responsible decisions regarding contact with strangers online. Children are also more neurologically vulnerable than adults to abusive contact facilitated by Defendant's app because they have a hard time distinguishing between patterns of genuine friendship and grooming relationships.

180. Plaintiff was a foreseeable user of Defendant's app.

181. Defendant knew that minors such as Plaintiff would use its app.

182. Defendant breached its duty in designing its app.

183. Defendant breached its duties by failing to use reasonable care in the design of its app by negligently designing it with features that specifically allow predators to find, groom, exploit, and abuse children, as described herein.

184. Defendant breached its duties by designing an app that was less safe to use than an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

185. Defendant breached its duty by failing to use reasonable care in the design of its app by negligently designing its app with features as described above that created or increased the risk of grooming, sexual abuse, and sexual exploitation for children, which can lead to a cascade

of negative effects, including but not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

186. Defendant breached its duty by failing to use reasonable care to use cost-effective, reasonably feasible alternative designs, including changes to the harmful features, and other safety measures, to minimize the harms described herein, including but not limited to:

a. Requiring children have parental approval and a parent's email address to sign-up for an account;

b. Effective parental controls;

c. Effective parental notifications, including notifying parents any time a child messages another user, particularly an adult user, or notifying parents when children interact with accounts that have been blocked by other users or suspended in the past, among other controls;

d. Setting default safety settings to the most protective options, including blocking direct messaging between child and adult users, or only allowing messaging between adult users and a child with the parent's explicit permission to message the adult user;

e. Requiring adults to provide a phone number when signing up for an account;

f. Pop-up safety notices within chats and games to warn users about inappropriate behavior;

g. Preventing strangers from sending Robux to child accounts, and preventing children from sending Robux to strangers' accounts;

h. Banning IP and MAC addresses of accounts associated with known abusers;

i. Controlled chat option;

j. Providing a transcript of a child's communications to the parent;

k. Implementing reporting protocols to allow users or visitors of Defendant's app to report CSAM and adult predator accounts specifically without the need to create or log in to the app prior to reporting;

l. Robust identity and age verification; and

m. Others as set forth herein.

187. Alternative designs that would reduce the dangerous features of Defendant's app were available, would have served effectively the same purpose as Defendant's defectively designed app, and would have reduced the gravity and severity of danger Defendant's app posed to Plaintiff and other minor users.

188. A reasonable company under the same or similar circumstances as Defendant would have designed a safer app.

189. At all relevant times, Plaintiff used Defendant's app in the manner in which it was intended by Defendant to be used.

190. As a direct and proximate result of Defendant's breached duties, Plaintiff was harmed. Defendant's design of its app was a substantial factor in causing Plaintiff's harms and injuries.

191. Plaintiff was injured from using Defendant's defective app through no fault of her own.

192. The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendant's app.

193. The conduct of Defendant, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish Defendant and deter others from like conduct.

194. Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**<u>FOURTH CAUSE OF ACTION</u>**

**NEGLIGENCE – FAILURE TO WARN**

**(By Plaintiff Against Defendant Roblox Corporation)**

195. Plaintiff incorporates each and every factual allegation set forth above.

196. This claim is brought against Defendant Roblox.

197. At all relevant times, Defendant designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefited from its app being used by Plaintiff.

198. Plaintiff was a foreseeable user of Defendant's app.

199. Defendant knew, or by the exercise of reasonable care, should have known, that use of its app was dangerous, harmful, and injurious when used in a reasonably foreseeable manner by minors.

200. Defendant knew, or by the exercise of reasonable care, should have known, that ordinary minor users, such as Plaintiff, would not have realized the potential risks and dangers of its app, including a risk of grooming, sexual abuse, and sexual exploitation, which can lead to a cascade of harms. Those harms include but are not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

201. Had Plaintiff or her parent received proper or adequate warnings about the risks of Defendant's app, she would have heeded such warnings.

202. Defendant knew or, by the exercise of reasonable care, should have known that its app posed risks of harm to youth. These risks were foreseeable in light of Defendant's own internal data and knowledge regarding its app at the time of development, design, marketing, promotion, advertising and distribution to Plaintiff.

203. Because Defendant's conduct created the risk that child users of its app would be subject to grooming, sexual abuse, and sexual exploitation, Defendant owed a duty to all reasonably foreseeable users, including but not limited to minor users and their parents, to provide adequate warnings about the risk of using Defendant's app that were known to Defendant, or that Defendant should have known through the exercise of reasonable care.

204. In addition, as described above, Defendant owed a special relationship duty to Plaintiff to protect her against harm caused by its app and employees or by other users.

205. Defendant owed a heightened duty of care to minor users and their parents to warn about its app's risks because children's brains are not fully developed, resulting in a diminished capacity to make responsible decisions regarding contact with strangers online. Children are also more neurologically vulnerable than adults to abusive contact facilitated by Defendant's app because they have a hard time distinguishing between patterns of genuine friendship and grooming relationships.

206. Defendant breached its duty by failing to use reasonable care in providing adequate warnings to Plaintiff, such as failing to notify parents and the general public of the following, among others:

a. Defendant failed to require that children have parental approval before signing up for an account;

b. New users of Defendant's app can identify themselves as minors, begin to use the app, and do so indefinitely, without ever receiving a safety warning, and without ever having to provide information so that Defendant can warn the users' parents or guardians;

c. Defendant's app default safety settings allow adults and other strangers' accounts to find, "friend," and communicate with children's accounts;

d. Defendant's parental control settings allowed children to modify their own parental control settings;

e. Defendant's platforms recommend that adult users and other strangers' "friend" and contact child accounts;

f. Defendant fails to block the IP and MAC addresses of known abusers;

g. Adult predators use Defendant's app to target children for sexual exploitation, sextortion, and CSAM;

h. Defendant's app enable and increase risk of exposure to predators and can result in grooming, sexual abuse, and sexual exploitation, as well as their resultant physical and mental injuries;

i. Sexual predators use Robux to coerce children into sending them nude photos or engaging in other types of sexually explicit behavior;

j. Usage of Defendant's app can increase risky and uninhibited behavior in children, making them easier targets to adult predators for sexual exploitation, sextortion, and CSAM;

k. Usage of Defendant's app can normalize abuse and pornography, leading children to abuse other children either contemporaneously or later when the children are older;

l. The likelihood and severity of harm is greater for children;

m. The likelihood and intensity of these harmful effects is exacerbated by the interaction of the app's various features with one another;

n. Defendant fails to verify identities and ages, allowing adult predators to pose as children on Defendant's app; and

o. Others as set forth herein.

207. A reasonable company under the same or similar circumstances as Defendant would have used reasonable care to provide adequate warnings to consumers, including the parents of minor users, as described herein.

208. At all relevant times, Defendant could have accompanied the sale of its app with a quantum of warning adequate to guard against the harms and injuries described herein.

209. As a direct and proximate result of Defendant's breach of its duty to provide adequate warnings, Plaintiff was harmed and sustained the injuries set forth herein. Defendant's

failure to provide adequate and sufficient warnings was a substantial factor in causing the harms to Plaintiff.

210. As a direct and proximate result of Defendant's failure to warn, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental, and related expenses.

211. Plaintiff was injured from using Defendant's defective app through no fault of her own.

212. The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendant's app.

213. The conduct of Defendant, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish Defendant and deter others from like conduct.

214. Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## FIFTH CAUSE OF ACTION

## NEGLIGENCE

## (By Plaintiff Against Defendant Roblox Corporation)

215. Plaintiff incorporates each and every factual allegation set forth above.

216. At all relevant times, Defendant developed, set up, managed, maintained, operated, marketed, advertised, promoted, supervised, controlled, and benefited from its app being used by Plaintiff.

217. Defendant owed Plaintiff a duty to exercise reasonable care in the development, setup, management, maintenance, operation, marketing, advertising, promotion, supervision, and control of its app and not to create an unreasonable risk of harm from and in the use of its app

(including an unreasonable risk of grooming, sexual abuse, and sexual exploitation, and other associated physical or mental injuries); to protect Plaintiff from unreasonable risk of injury from and in the use of its app; and not to invite, encourage, or facilitate youth, such as Plaintiff, to foreseeably engage in dangerous or risky behavior through, on, or as a reasonably foreseeable result of using its app. These duties govern Defendant's own specific actions and are based on direct actions Defendant took in developing its app and features.

218. In addition, Defendant owed a special relationship duty to Plaintiff to protect her against harm caused by its app and employees or by other users. This special relationship duty is based on the following:

a. As a business, Defendant owes a duty to protect customers against reasonably foreseeable criminal acts of third parties and other dangers known to Defendant on its app;

b. As a minor, Plaintiff was vulnerable and dependent on Defendant for a safe product experience on its app, and Defendant has superior ability and control to provide that safety with respect to activities that it sponsors or controls;

c. Plaintiff relied upon Defendant for protection against third-party misuse or misconduct;

d. The special relationship Plaintiff had with Defendant substantially benefits Defendant through profits and growth in users and user activity. Defendant could not successfully operate without the growth in users and user activity generated by children;

e. Plaintiff was dependent on Defendant's design to provide structure, guidance, and a safe product experience;

f. Defendant has superior control over its app and the ability to protect its users. Defendant imposes a variety of rules and restrictions to maintain a safe and orderly product experience. Defendant employs internal staff to enforce these rules and restrictions and can monitor and discipline users when necessary.

Defendant has the power to influence Plaintiff's values, consciousness, relationships, and behaviors; and

g. Defendant has voluntarily undertaken a responsibility to keep children safe on its app. As alleged above, Defendant has publicly stated that it takes steps to keep children safe on its app and therefore has undertaken a duty to act reasonably in taking such steps.

219. Plaintiff was a foreseeable user of Defendant's app.

220. Defendant knew that minors such as Plaintiff would use its app.

221. Defendant invited, solicited, encouraged, or reasonably should have foreseen the fact, extent, and manner of Plaintiff's use of its app.

222. Defendant knew or, by the exercise of reasonable care, should have known, that the reasonably foreseeable use of its app (as developed, set up, managed, maintained, supervised, and operated by Defendant) was dangerous, harmful, and injurious when used by minors such as Plaintiff in a reasonably foreseeable manner.

223. At all relevant times, Defendant knew or, by the exercise of reasonable care, should have known that its app (as developed, set up, managed, maintained, supervised, and operated by that Defendant) posed unreasonable risks of harm to minors such as Plaintiff, which risks were foreseeable, including in light of the internal data and knowledge Defendant had regarding its app.

224. Defendant knew, or by the exercise of reasonable care, should have known, that ordinary child users of its app, such as Plaintiff, would not have realized the potential risks and dangers of using the app, including a risk of grooming, sexual abuse, and sexual exploitation, which foreseeably can lead to a cascade of negative effects, including but not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, eating disorders, death, and other harmful effects.

225. Defendant's conduct was closely connected to Plaintiff's injuries, which were highly certain to occur, as evidenced by the significance of Plaintiff's injuries.

226. Defendant could have avoided Plaintiff's injuries with minimal cost, including, for example, by not including certain features in its app which harmed Plaintiff. Imposing a duty on Defendant would benefit the community at large.

227. Imposing a duty on Defendant would not be burdensome to it because it has the technological and financial means to avoid the risks of harm to Plaintiff.

228. Defendant owed a heightened duty of care to youth users of its app because the children's brains are not fully developed, meaning young people are more neurologically vulnerable than adults to abusive contact facilitated by Defendant's app because they have a hard time distinguishing between patterns of genuine friendship and grooming relationships.

229. Defendant breached its duties of care owed to Plaintiff through its affirmative malfeasance, actions, business decisions, and policies in the development, set up, management, maintenance, operation, marketing, advertising, promotion, supervision, and control of its app. These breaches are based on Defendant's own actions in managing its own app made available to the public, independent of any actions taken by a third party. Those breaches include but are not limited to:

a. Including features in its app that, as described above, are currently structured and operated in a manner that unreasonably creates or increases the foreseeable risk of grooming, sexual abuse, and sexual exploitation to youth, including Plaintiff.

b. Including features in its app that, as described above, are currently structured and operated in a manner that unreasonably creates or increases the foreseeable risk of harm to the physical and mental health and well-being of youth users, including Plaintiff, including but not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but

not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, eating disorders, death, and other harmful effects;

c. Maintaining unreasonably dangerous features in its app after notice that such features, as structured and operated, posed a foreseeable risk of harm to the physical and mental health and well-being of youth users; and

d. Facilitating unsupervised and/or hidden use of its app by youth, including by adopting protocols that allow youth users to change their own safety settings or parental controls, and create multiple and private accounts.

230. Defendant breached its duties of care owed to Plaintiff through its nonfeasance, failure to act, and omissions in the development, setup, management, maintenance, operation, marketing, advertising, promotion, supervision, and control of its app. These breaches are based on Defendant's own actions in managing its app made available to the public, independent of any actions taken by a third party. Those breaches include but are not limited to:

a. Failing to implement effective parental controls;

b. Failing to implement effective parental notifications, such as when a child messages another user, particularly an adult user, or when a child interacts with accounts that have been blocked by other users or suspended in the past;

c. Failing to require adult users to provide a phone number when signing up for an account;

d. Failing to implement pop-up safety notices within chats and games to warn users about inappropriate behavior;

e. Failing to ban IP and MAC addresses of accounts associated with known abusers;

f. Failing to set default safety settings to the most protective options;

g. Having an open chat function;

h. Failing to provide a transcript of a child's communications to the parent;

i. Failing to implement reasonably available means to monitor for, report, and prevent the use of its app by sexual predators to victimize, abuse, and exploit youth users;

j. Failing to provide effective mechanisms for youth users and their parents/guardians to report abuse or misuse of its app;

k. Failing to implement effective protocols to verify ages and identity of all users

l. Promoting integration and interactivity with other platforms where predators are known to prey on children; and

m. Others as set forth herein.

231. A reasonable company under the same or similar circumstances as Defendant would have developed, set up, managed, maintained, supervised, and operated its app in a manner that is safer for and more protective of youth users like Plaintiff.

232. At all relevant times, Plaintiff used Defendant's app in the manner in which it was intended to be used.

233. As a direct and proximate result of Defendant's breach of one or more of its duties, Plaintiff was harmed. Such harm includes the sexual exploitation of Plaintiff by a child predator and a cascade of resulting negative effects, including but not limited to damage to self- worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues such as depression, anxiety, and other harmful effects.

234. Defendant's breach of one or more of its duties was a substantial factor in causing harm and injuries to Plaintiff.

235. Plaintiff was injured from using Defendant's defective app through no fault of her own.

236. The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendant's app.

237. Defendant's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, oppressive, extreme, and outrageous, and displayed an entire want

of care and a conscious and depraved indifference to the consequences of their conduct, including to the health, safety, and welfare of their customers, and warrants an award of punitive damages in an amount sufficient to punish Defendant and deter others from like conduct.

238. Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## SIXTH CAUSE OF ACTION

## NEGLIGENT UNDERTAKING

## (By Plaintiff Against Defendant Roblox Corporation)

239. Plaintiff incorporates each and every factual allegation set forth above.

240. Defendant rendered parental control services and account safety services to Plaintiff.

241. Defendant knew, or reasonably should have known, that effective parental control and account safety services were necessary for the protection of minor users.

242. Defendant's conduct was closely connected to Plaintiff's injuries, which were highly certain to occur, as evidenced by the significance of Plaintiff's injuries.

243. Defendant could have avoided Plaintiff's injuries with minimal cost, including, for example, by implementing parental control and account safety services that were effective and that would prevent child users from being contacted by adult accounts or strangers' accounts generally.

244. Imposing a duty on Defendant would benefit the community at large.

245. Imposing a duty on Defendant would not be burdensome to it because it has the technological and financial means to avoid the risks of harm to children.

246. Defendant owed a heightened duty of care to minor users and their parents to implement parental control and account safety services that were effective and that would prevent child users from being contacted by adult accounts or strangers' accounts generally.

247. Plaintiff's parent relied on Defendant exercising reasonable care in undertaking to render parental control and account safety services.

248. Defendant breached its duty of undertaking by failing to use reasonable care in rendering its parental control and account safety services to prevent child users from being contacted by adult accounts or strangers' accounts generally.

249. Defendant failed to exercise reasonable care in rendering these parental control and account safety services.

250. Defendant's failure to exercise reasonable care increased the risk of, and was a substantial factor in causing, harm to Plaintiff.

251. Plaintiff was harmed by her parent's reliance on Defendant to provide effective parental control and account safety services.

252. Defendant's breach of one or more of its duties was a substantial factor in causing harm and injuries to Plaintiff.

253. Plaintiff was injured from using Defendant's defective app through no fault of her own.

254. The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff is not the type of risks that are immediately apparent from using Defendant's app.

255. The conduct of Defendant, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of their conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages.

256. Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## SEVENTH CAUSE OF ACTION

## FRAUDULENT CONCEALMENT AND MISREPRESENTATION

## (By Plaintiff Against Defendant Roblox Corporation)

257. Plaintiff incorporates each and every factual allegation set forth above.

258. As set forth in more detail above, Defendant knew about the defective conditions of its app and that the app posed serious safety risks to child users.

259. Defendant was under a duty to tell the public the truth and to disclose the defective conditions of its app and that the app posed serious safety risks to child users.

260. Defendant breached its duty to the public, users, and their parents by concealing, failing to disclose, and making misstatements about the serious safety risks presented by its app. Even though Defendant knew of those risks based on Defendant's internal reviews, external studies known to Defendant, and parent and police reports made to Defendant, Defendant intentionally concealed those risks to not lose users and revenue, and to induce parents to allow their children to use Defendant's app.

261. Defendant made numerous material representations downplaying any potential harm associated with its app and reassuring the public, users, and parents, including Plaintiff's parent, that its app was safe, including but not limited to:

a. "We continually develop cutting-edge technologies to ensure that the Roblox platform remains a safe and fun space for players all over the world";

b. "Roblox uses a combination of chat filters, both human and software moderation, to proactively remove inappropriate content from the platform";

c. "We are dedicated to working together with parents and digital safety experts to promote a family-friendly environment that allows all players to imagine, create, and play online";

d. "We are committed to ensuring that Roblox is a safe and fun place for everyone";

e. "For users age 12 and under, we take extra precautions to ensure their safety and privacy by automatically enforcing more restricted settings so they can only send a direct message to other users that are accepted as friends on Roblox";

f. "Roblox provides a fun, supportive, and educational space where your child's imagination can thrive";

g. “Roblox’s state-of-the-art filtering system is actively monitored and dynamically adjusted to prevent inappropriate content and personally identifiable information from being visible on the platform”;

h. Roblox’s policies “are designed to make ROBLOX a safe place for people of all ages, including very young children”;

i. “ROBLOX staff” were monitoring the app to ensure its safety, including from predatory behavior; and

j. “All text on Roblox is filtered regardless of a user’s age. For users aged 12 and under, however, we go a step further by automatically placing them on a more restricted chat with reduced filters for 13+ year olds system that allows them to send private messages only to users they have accepted as friends on Roblox.”

262. Defendant’s representations regarding the safety of its app were false, and Defendant knew that its representations about the safety of its app were false when the statements were made.

263. Defendant intentionally failed to disclose the serious safety risks posed by the design of its app to the public, users, and their parents, including Plaintiff’s parent. Such risks were known only to Defendant through its internal reviews and external studies known to Defendant, as well as parent and police reporting to Defendant, and the public, users, and their parents could not have discovered such serious safety risks.

264. The public, users, and their parents did not know of the serious safety risks posed by the design of Defendant’s app, which were known by Defendant.

265. By intentionally concealing and failing to disclose defects inherent in the design of its app, Defendant knowingly and recklessly misled the public, users, and their parents, including Plaintiff’s parent, into believing its app was safe for children to use.

266. By intentionally making numerous material representations, downplaying any potential harm associated with its app, and reassuring the public, users, and parents that its app was safe, Defendant fraudulently misled the public, users, and their parents, including Plaintiff’s parent, into believing its app was safe for children to use.

267. Defendant intended for the public, users, and their parents to rely on its representations about the safety of its app.

268. Defendant knew that its concealment, misstatements, and omissions were material. A reasonable person would find information about the risk of grooming, sexual abuse, sexual exploitation, and other serious risks associated with the use of Defendant's app, to be important when deciding whether to allow children to use it.

269. The public, users, and their parents, including Plaintiff's parent, reasonably relied on the representations made by Defendant about the safety of its app for use by children.

270. Defendant intended to deceive the public, users, and their parents, including Plaintiff's parent, by concealing the defects in the design of its app, which made the app unsafe.

271. As a direct and proximate result of Defendant's material omissions, misrepresentations, and concealment of material information, Plaintiff was not aware and could not have been aware of the facts that Defendant concealed or misstated, and therefore justifiably and reasonably believed that Defendant's app was safe for children to use.

272. If the serious safety risks presented by the design of Defendant's app had been disclosed, the public, users, and their parents reasonably would have acted differently and/or would not have permitted children to use the app.

273. As a direct and proximate result of Defendant's material omissions, misrepresentations, and concealment of material information, Plaintiff's sustained serious injuries and harm.

274. Defendant's concealment and Plaintiff's reliance on Defendant's representations about the safety of its app was a substantial factor in causing harm to Plaintiff.

275. Defendant's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish Defendant and deter others from like conduct.

276. Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**EIGHTH CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION**

**(By Plaintiff Against Defendant Roblox Corporation)**

277. Plaintiff incorporates each and every factual allegation set forth above.

278. As set forth in more detail above, Defendant knew about the defective conditions of its app and that the app posed serious safety risks to child users.

279. Defendant was under a duty to tell the public the truth and to disclose the defective conditions of its app and that the app posed serious safety risks to child users.

280. Defendant breached its duty to the public, users, and their parents by concealing, failing to disclose, and making misstatements about the serious safety risks presented by its app. Even though Defendant knew of those risks based on Defendant's internal reviews, external studies known to Defendant, and parent and police reports made to Defendant, Defendant intentionally concealed those risks to not lose users and revenue, and to induce parents to allow their children to use its app.

281. Defendant negligently made numerous material representations downplaying any potential harm associated with its app and reassuring the public, users, and parents, including Plaintiff's parent, that its app was safe, including but not limited to:

a. "We continually develop cutting-edge technologies to ensure that the Roblox platform remains a safe and fun space for players all over the world";

b. "Roblox uses a combination of chat filters, both human and software moderation, to proactively remove inappropriate content from the platform";

c. "We are dedicated to working together with parents and digital safety experts to promote a family-friendly environment that allows all players to imagine, create, and play online";

d. “We are committed to ensuring that Roblox is a safe and fun place for everyone”;

e. “For users age 12 and under, we take extra precautions to ensure their safety and privacy by automatically enforcing more restricted settings so they can only send a direct message to other users that are accepted as friends on Roblox”;

f. “Roblox provides a fun, supportive, and educational space where your child’s imagination can thrive”;

g. “Roblox’s state-of-the-art filtering system is actively monitored and dynamically adjusted to prevent inappropriate content and personally identifiable information from being visible on the platform”;

h. Roblox’s policies “are designed to make ROBLOX a safe place for people of all ages, including very young children”;

i. “ROBLOX staff” were monitoring the app to ensure its safety, including from predatory behavior;

j. Roblox’s policies “are designed to make ROBLOX a safe place for people of all ages, including very young children”;

k. “ROBLOX staff” were monitoring the app to ensure its safety, including from predatory behavior; and “All text on Roblox is filtered regardless of a user’s age. For users aged 12 and under, however, we go a step further by automatically placing them on a more restricted chat with reduced filters for 13+ year olds system that allows them to send private messages only to users they have accepted as friends on Roblox.”

282. Defendant’s representations that its app was safe for use by children were not true.

283. Defendant had no reasonable grounds for believing its representations that its app was safe for use by children were true.

284. By concealing and failing to disclose or failing to take reasonable care to disclose the defects, Defendant negligently misled the public, users, and their parents, including Plaintiff, into believing its app was safe for children to use.

285. By making numerous material representations downplaying any potential harm associated with its app and reassuring the public, users, and their parents that its app was safe, Defendant negligently misled the public, users, and their parents, including Plaintiff's parent, into believing its app was safe for children to use.

286. As a direct and proximate result of Defendant's material omissions, misrepresentations, and concealment of material information, Plaintiff was not aware and could not have been aware of the facts that Defendant concealed or misstated, and therefore justifiably and reasonably believed that Defendant's app was safe for use.

287. As a direct and proximate result of Defendant's material omissions, misrepresentations, and concealment of material information, Plaintiff sustained serious injuries and harm.

288. Defendant's concealment and Plaintiff's reliance on Defendant's representations about the safety of its app was a substantial factor in causing harm to Plaintiff.

289. Defendant's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of their customers, and warrants an award of punitive damages in an amount sufficient to punish Defendant and deter others from like conduct.

290. Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant Roblox Corporation for the above-referenced claims and causes of action, and as follows:

1. Past, present, and future general damages, the exact amount of which has yet to be ascertained, in an amount which will conform to proof at time of trial, to compensate Plaintiff for injuries sustained as a result of the use of Defendant's product, including but not limited to

physical pain and suffering, mental anguish, loss of enjoyment of life, emotional distress, and expenses for medical treatments;

2. Past, present, and future economic and special damages, according to proof at the time of trial;

3. Impaired earning capacity according to proof at the time of trial;

4. Medical expenses, past and future, according to proof at the time of trial;

5. Punitive or exemplary damages according to proof at the time of trial;

6. Attorneys' fees;

7. For costs of suit incurred herein;

8. Pre-judgment and post-judgment interest as provided by law; and

9. For such other and further relief as the Court may deem just and proper.

## VIII. DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

///

///

///

///

Dated: September 28, 2026

Respectfully submitted,

By: /s/ Nathaniel Foote
Nathaniel Foote, State Bar No. 318998
*Admitted Pro Hac Vice*
teame@vca.law
Lydia Atkinson, State Bar No. 085479
*Admitted Pro Hac Vice*
lydia@vca.law
Andreozzi + Foote
4503 N. Front St.
Harrisburg, PA 17110
Telephone: 717-525-9124
Facsimile: 717-525-9143
*Attorneys for Plaintiff*